UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA,

                              Plaintiff,

        v.

BLIZZARD BUSTERS SNOWPLOWING
CORP., BLIZZARD BUSTERS
SNOWPLOWING, INC., BLIZZARD
BUSTERS, CORP., BLIZZARD BUSTERS
LANDSCAPING & SNOWPLOWING,
NORMA REID-LYNCH, *and* COSTCO
WHOLESALE CORPORATION,

                              Defendants.

No. 21-CV-8220 (KMK)

OPINION & ORDER

Appearances:

Amy C. Gross, Esq.
Usery & Associates
Hartford, CT
*Counsel for Plaintiff*

Allison C. Leibowitz, Esq.
Matthew C. Maloney, Esq.
Sal F. DeLuca, Esq.
Simmons Jannace DeLuca, LLP
Syosset & Hauppauge, NY
*Counsel for Defendant Costco Wholesale Corporation*

KENNETH M. KARAS, United States District Judge:

        Plaintiff Travelers Casualty Insurance Company of America ("Plaintiff") initiated this

Action against Costco Wholesale Corporation ("Defendant"); Blizzard Busters Snowplowing

Corp., Blizzard Busters Snowplowing, Inc., Blizzard Busters, Corp., and Blizzard Busters

Landscaping & Snowplowing (collectively, the "Blizzard Buster Entities" or the "Entities"); and

Norma Reid-Lynch.  Plaintiff requested a declaration pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a), that it has no obligation to defend or indemnify the Blizzard Buster Entities in connection with an underlying state court action (the "Underlying Action") against the Blizzard Buster Entities.  (*See generally* Compl. (Dkt. No. 11).)[1]  Because the Blizzard Buster Entities and Reid-Lynch failed to appear in this Action, the Court entered a default declaratory judgment in favor of Plaintiff as against the Blizzard Buster Entities and Reid-Lynch.  (*See* Default J. (Dkt. No. 53).)  Thereafter, the Court granted Defendant's Motion for Judgment on the Pleadings, as well as Plaintiff's Motion To Dismiss counterclaims Defendant had filed along with its Answer.  (*See generally* Op. & Order ("March 2023 Opinion") (Dkt. No. 90); *see also* Answer (Dkt. No. 59).)  However, the Court granted both parties leave to file amended pleadings.  (*See* March 2023 Opinion 16.)

Taking the Court up on its offer, Defendant filed amended counterclaims (the "Counterclaims") against Plaintiff, seeking a declaratory judgment that Plaintiff has a duty to defend and "possibly . . . to indemnify" Defendant in the Underlying Action, as well as raising a breach of contract claim for Plaintiff's failure to defend and indemnify Defendant therein.  (*See* Am. Counterclaims ¶¶ 49–60 (Dkt. No. 91).)  Before the Court is Plaintiff's Motion To Dismiss Defendant's Counterclaims, pursuant to Federal Rule of Civil Procedure 12(b)(6), (the

---

[1] The Underlying Action is captioned *Norma Reid-Lynch v. Costco Wholesale Corp., et al.*, No. 25857/2018E (N.Y. Sup. Ct.), and an amended verified complaint was filed in that case on September 10, 2020 in New York Supreme Court, Bronx County.  (*See* Compl. Ex. B ("State Compl.") at 2 (Dkt. No. 11-2).)

For all documents filed with the Court, the Court cites to the ECF-stamped page number in the upper-right corner of each page, unless otherwise noted.

"Motion").  (*See* Not. of Mot. (Dkt. No. 96).).[2]  For the following reasons, Plaintiff's Motion is granted.

## I.  Background

### A.  Materials Considered

Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the pleadings themselves," because "[t]o go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to [Rule] 56." *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002). "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment." *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety . . . , documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (quotation marks omitted)); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken.'" (alteration omitted) (quoting *Samuels v. Air Transp. Loc.* 504, 992 F.2d 12, 15 (2d Cir. 1993))). A court may consider a document incorporated by reference "where (1) [the] plaintiff relies on the materials in framing the complaint, (2) the complaint clearly and substantially references the documents, and (3) the document's authenticity or accuracy is undisputed." *Stewart v. Riviana*

---

[2] As previously explained, the Court has diversity jurisdiction over Defendants' Counterclaims.  *See* 28 U.S.C. § 1332(a).  (*See also* Am. Counterclaims ¶ 3; March 2023 Opinion 9 n.2.)

*Foods Inc.*, No. 16-CV-6157, 2017 WL 4045952, at *6 (S.D.N.Y. Sept. 11, 2017) (emphasis

omitted) (collecting cases).

Here, Defendant expressly incorporates by reference in its Counterclaims the Travelers

insurance policy at issue (the "Policy")—which Plaintiff attached to its Complaint—and plainly

relied on the Policy when framing its Counterclaims.  (*See* Am. Counterclaims ¶ 4; *see also*

March 2023 Opinion 10 n.3.)  Moreover, neither Party has objected to the accuracy or

authenticity of the Policy.  Accordingly, the Court will again consider the Policy in deciding

Plaintiff's second Motion To Dismiss.

B.  Factual Background[3]

The Court assumes the Parties' familiarity with the facts and the procedural history of

this case, as described in a prior Opinion & Order.  (*See* March 2023 Opinion 2–5.)  Therefore,

the Court will recount only the background information necessary to resolve the instant Motion.

1.  The Policy

Plaintiff issued the Policy—which provides coverage for certain categories of accidental

bodily injury and property damage, (*see* Compl. Ex. A ("Travelers Policy") at 74, 98 (Dkt. No.

11-1))—to the Blizzard Buster Entities for the period running from December 8, 2017 to

December 8, 2018, (*see id.* at 3).[4]

---

[3] The following facts are assumed to be true for the purposes of resolving the instant
Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of
Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

[4] Although the Policy itself only lists Blizzard Busters Landscaping and Blizzard Busters
Snowplowing Corp. as named insureds, (*see* Travelers Policy 3, 154), the Policy was modified to
include as named insureds any entity, other than a partnership or joint venture, over which
Blizzard Busters Landscaping had a majority ownership interest as of the effective date of the
Policy, (*see id.* at 118).  In any event, the Parties do not appear to dispute that the Policy is
applicable to each of the Blizzard Buster Entities as named insureds.  (*See* March 2023 Opinion
3 n.1.)

As relevant here, the Policy includes as a Supplementary Payments provision.  (*See id.* at 80–81.)  That provision states, in relevant part:

> 2.  If we [i.e., Plaintiff] defend an insured [i.e., the Blizzard Buster Entities] against a suit and an indemnitee of the insured [i.e., Defendant] is also named as a party to the suit, we will defend that indemnitee if all of the following conditions are met:
>
> [(a)] The suit against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an insured contract;
>
> [(b)] This insurance applies to such liability assumed by the insured;
>
> [(c)] The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same insured contract;
>
> [(d)] The allegations in the suit and the information we know about the occurrence are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee ["Subparagraph (d)"];
>
> [(e)] The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such suit and agree that we can assign the same counsel to defend the insured and the indemnitee ["Subparagraph (e)"]; and
>
> [(f)]  The indemnitee[] [a]grees in writing to: [] [c]ooperate with us in the investigation, settlement or defense of the suit; [] [i]mmediately send us copies of any demands, notices, summonses or legal papers received in connection with the suit; [] [n]otify any other insurer whose coverage is available to the indemnitee; and [] [c]ooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and [] [p]rovides us with written authorization to [] [o]btain records and other information related to the suit; and [] [c]onduct and control the defense of the indemnitee in such suit.

(*See id.* 81.)[5]

### 2.  The Underlying Action

In the Underlying Action, Reid-Lynch filed a complaint asserting claims sounding in negligence and premises liability against certain of the Blizzard Buster Entities, as well as

---

[5] As explained previously, (*see* March 2023 Opinion 13 n.4), the Policy identifies defined terms through the use of quotation marks around each occurrence of the term (e.g., "suit"). Thus, to avoid potential confusion, these quotation marks have again been silently deleted in all direct quotations to the Policy.

Defendant.  (*See* Am. Counterclaims ¶ 10; *see also* State Compl. 2.)  Her claims include the allegation that Defendant "was negligent in failing to maintain and clean [the Costco] parking lot located at . . . 1 Industrial Lane, New Rochelle, New York, in a reasonably safe and suitable condition and in good repair and clear of snow and/or ice[,]" which failure allegedly resulted in her getting injured.  (Am. Counterclaims ¶¶ 8–10 (quotation marks omitted).)

For its part, Defendant has asserted claims against the relevant Blizzard Buster Entities in the Underlying Action for "contribution, common law indemnification, contractual indemnification, and breach of contract[.]"  (*Id.* ¶ 24.)[6]  Likewise, the Blizzard Buster Entities involved in the Underlying Action have asserted claims therein against Defendant for "contractual (and possibly common law) indemnification[,]" as well as contribution.  (*Id.* ¶¶ 40–41.)[7]  With respect to the Blizzard Buster Entities' involvement in the Underlying Action, Defendant asserts that Plaintiff has assigned defense counsel to represent the Entities in that case, and that the Blizzard Buster Entities' counsel "refuses to allow [Defendant] or its counsel to contact the named insured [i.e., the Blizzard Buster Entities] to demand [pursuant to the Supplementary Payments provision that] the named insured request that [Plaintiff] conduct and control the defense of [Defendant in the Underlying Action] and agree [Plaintiff] can assign the same counsel to defend it and [Defendant]."  (*Id.* ¶ 36.)[8]

---

[6] Defendant avers in its Counterclaims that it will "withdraw" these claims against the Blizzard Buster Entities "if [Plaintiff] agrees to defend [it]" in the Underlying Action.  (Am. Counterclaims ¶ 24.)

[7] In Defendant's view, the Blizzard Buster Entities claim in the Underlying Action are "baseless" and "boilerplate[.]"  (Am. Counterclaims ¶ 38.)

[8] Plaintiff here initiated the instant Action to obtain declaratory relief concerning the coverage available to the Blizzard Buster Entities under the Policy in the Underlying Action.  (Compl. ¶¶ 1–3.)

6

C.  Procedural History

On March 27, 2023, the Court issued an Opinion & Order granting Defendant's Motion for Judgment on the Pleadings, as well as Plaintiff's Motion To Dismiss Defendant's initial counterclaims.  (*See generally* March 2023 Opinion.)  In that Opinion & Order, the Court granted the Parties leave to file amended pleadings.  (*See id.* at 16.)  On April 26, 2023, Defendant filed its Amended Counterclaims.  (*See* Am. Counterclaims.)  Plaintiff filed a pre-motion letter informing Defendant of its intention to move to dismiss Defendant's Amended Counterclaims on May 9, 2023.  (*See* Letter from Amy C. Gross, Esq. to Sal F. DeLuca, Esq. (May 9, 2023) (Dkt. No. 92).)  On May 15, 2023, Defendant filed a letter in response, indicating its opposition to Plaintiff's proposed motion.  (*See* Letter from Sal F. DeLuca, Esq. to Amy C. Gross, Esq. (May 15, 2023) (Dkt. No. 93).)  On May 16, 2023, the Court scheduled a pre-motion conference for June 15, 2023.  (*See* Dkt. No. 94.)  At the conference, the Court set a briefing schedule for Plaintiff's motion. (*See* Dkt. (minute entry for June 15, 2023).)

On July 11, 2023, Plaintiff filed its Motion To Dismiss Defendant's Amended Counterclaims.  (*See* Not. of Mot.; Pl.'s Mem. of Law in Supp. of Mot. To Dismiss ("Pl. Mem.") (Dkt. No. 96-1); Decl. of Amy C. Gross, Esq. in Supp. of Mot. To Dismiss (Dkt. No. 96-2).).  After receiving an extension, (Dkt. Nos. 97–98), Defendant filed its opposition to Plaintiff's Motion and accompanying declaration on August 8, 2023, (Def.'s Mem. of Law in Opp'n to Mot. To Dismiss ("Def. Opp'n") (Dkt. No. 100); Decl. of Matthew C. Maloney, Esq. in Opp'n to Mot. To Dismiss (Dkt. No. 99).)  On August 29, 2023, Plaintiff filed its reply brief in support of its Motion To Dismiss.  (Pl.'s Reply Mem. in Supp. of Mot. To Dismiss ("Pl. Reply") (Dkt. No. 103).)

## II.  Discussion

### A.  Standard of Review

"In considering a motion to dismiss a counterclaim, the [C]ourt applies the same standards as a motion to dismiss a complaint." *Zurich Am. Life Ins. Co. v. Nagel*, 571 F. Supp. 3d 168, 175 (S.D.N.Y. 2021) (citing *Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-CV-5075, 2020 WL 3472597, at *4 (S.D.N.Y. June 25, 2020)); *see also PharmacyCheck.com v. Nat'l Ass'n of Bds. Of Pharmacy*, 629 F. Supp. 3d 116, 127 (S.D.N.Y. 2022) (applying the standard of review applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) to the plaintiff's motion to dismiss the defendant's counterclaims).

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief

8

will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a [movant's] motion to dismiss, a judge must accept as true all of the factual allegations contained in the [pleading]," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the [non-movant]," *Daniel v. T & M Prot. Res., Inc*., 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the [pleading], in documents appended to the [pleading] or incorporated in the [pleading] by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B.  Analysis[9]

In its Motion, Plaintiff argues that Defendant admits in its Counterclaims that it has failed to satisfy two conditions that are required for Defendant to be eligible for coverage under the

---

[9] Because Defendant does not point to any other provision pursuant to which it is entitled to coverage under the Policy, the Court limits its analysis to the Supplementary Payments provision, upon which Defendant expressly relies.  (*See generally* Am. Counterclaims; Def. Opp'n; *see also* Am. Counterclaims ¶ 19 (reflecting Defendant's reliance on the Supplementary Payments provision).)

Policy's Supplementary Payments provision.  (*See* Pl. Mem. 11–14.)  More specifically, Plaintiff contends that: (1) in admitting that Defendant and the Blizzard Buster Entities have asserted claims against each other in the Underlying Action, Defendant has also admitted that "it cannot meet the requirements of [Subparagraph] (d) [of the Supplementary Payments provision], which bars any appearance of a conflict between the insured's interests and the putative indemnitee's interests[,]" (*id.* at 14–15); and (2) Defendant has failed to allege facts sufficient to show that Subparagraph (e) of the Supplementary Payments provision—which requires, among other things, that the Blizzard Buster Entities request that Plaintiff provide Defendant a defense—has been met, (*id.* at 16–17).  In response, Defendant asserts that: (1) no conflict of interest exists in the Underlying Action and, even if one does, it has agreed to waive any conflicts, (*see* Def. Opp'n 8–11); and (2) Plaintiff has "[un]clean hands" insofar as Plaintiff has effectively prevented it from contacting the Blizzard Buster Entities to ask that the Entities request that Plaintiff provide it a defense in the Underlying Action pursuant to Subparagraph (e) of the Supplementary Payments provision, (*see id.* at 11–14).  The Court will address both aspects of Plaintiff's Motion in turn.

As an initial matter, however, the Court reiterates that, under New York law, "[c]ourts bear the responsibility of determining the rights and obligations of parties under insurance contracts based on the specific language of the policies . . . ."  *Sanabria v. Am. Home Assur. Co.*, 501 N.E.2d 24, 24 (N.Y. 1986) (quotation marks and citation omitted); *see also Georgitsi Realty, LLC v. Penn-Star Ins. Co.*, 702 F.3d 152, 155 (2d Cir. 2012) (same).[10]  "As with the construction

---

[10] Defendant again asserts in its Counterclaims that "Washington law governs the substantive coverage issues in this case[,]" presumably because it is a "corporation formed under the laws of the State of Washington" and has its principal place of business therein.  (Am Counterclaims ¶¶ 1, 48; *see also* March 2023 Opinion 9 n.2.)  Plaintiff, in turn, argues that New York law should govern.  (*See* Pl. Mem. 12 n.4.)  For the reasons set forth in the Court's prior

of contracts generally, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court." *Vigilant Ins. Co. v. Bear Stearns Cos., Inc.*, 884 N.E.2d 1044, 1047 (N.Y. 2008) (quotation marks omitted); *see also Brettler Tr. of Zupnick Fam. Tr. 2008 A v. Allianz Life Ins. Co. of N. Am.*, 57 F.4th 57, 64 (2d Cir. 2022) ("[I]n New York State, an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract.  If the provisions are clear and unambiguous, courts are to enforce them as written." (quoting *Village of Sylvan Beach v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995))); *Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 175–76 (S.D.N.Y. 2020) ("The initial interpretation of a contract is a matter of law for the court to decide[,] [and] [i]nsurance contracts must be interpreted according to common speech and consistent with the reasonable expectation of the average insured." (quotation marks and citation omitted)).  The Court's interpretation of the language of an insurance contract must "afford[] a fair meaning to all of the language employed by the parties in the contract and leave[] no provision without force and effect."  *Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*, 774 N.E.2d 687, 693 (N.Y. 2002) (quotation marks and citation omitted); *Jovani Fashion Ltd. v. Fed. Ins. Co.*, 416 F. Supp. 3d 334, 341 (S.D.N.Y. 2019) (same).

A provision of an insurance contract is ambiguous when it is susceptible to "more than one meaning when viewed objectively by a reasonably intelligent person who has examined the

---

Opinion—and mindful of the fact that Defendant again cited to New York law in support of its arguments and completely failed to respond to Plaintiff's contention that New York law applies here (*see generally* Def. Opp'n)—the Court finds that New York law governs this dispute, (*see* March 2023 Opinion 9 n.2 (citing, inter alia, *Tesla Wall Sys., LLC v. Related Cos., L.P.*, No. 17-CV-5966, 2018 WL 4360777, at *2 (S.D.N.Y. Aug. 15, 2018) ("When a party assumes in its briefs that a particular jurisdiction's law applies, it gives implied consent sufficient to establish choice of law." (alteration and quotation marks omitted))).)

context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 7 F.4th 50, 56 (2d Cir. 2021) (citation omitted). If a provision is found to be ambiguous, "the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract." *Alexander & Alexander Servs. Inc. v. These Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998). "If the extrinsic evidence does not yield a conclusive answer as to the parties' intent," rules of contract construction may be applied. *McCostis v. Home Ins. Co. of Ind.*, 31 F.3d 110, 113 (2d Cir. 1994) (citing *Matthews v. Am. Cent. Ins. Co.*, 48 N.E. 751, 752 (N.Y. 1897)).

Here, the plain, unambiguous terms of the Supplementary Payments provision make clear that it is only triggered "if *all* of [its] conditions are met[.]" (Travelers Policy 81.) Accordingly, Defendant is only entitled to a defense under that provision if, inter alia, "[t]he allegations in the [Underlying Action] and the information [Plaintiff] know[s] . . . are such that no conflict appears to exist between the interests of the [the Blizzard Buster Entities] and the interests of the indemnitee [i.e., Defendant,]" *and* "[Defendant] and [the Blizzard Buster Entities] ask [Plaintiff] to conduct and control the defense of [Defendant in the Underlying Action] and agree that [Plaintiff] can assign the same counsel to defend the [Blizzard Buster Entities] and [Defendant.]" (*Id.*) *See Douglas v. Mister Sports*, 67 N.Y.S.3d 629, 630–31 (App. Div. 2018) (affirming the conclusion that a would-be third-party indemnitee was "not entitled to coverage in the underlying action . . . because the conditions for coverage under the supplementary payments provision of the policy ha[d] not been satisfied," where one such condition was "that there be no conflict between the insured's interests and the indemnitee's interests" and the conflict between the relevant parties was "evident" given the allegations in the underlying action); *Western*

*Heritage Ins. Co. v. Century Sur. Co.*, 32 F. Supp. 3d 443, 452 (S.D.N.Y. 2014) (explaining that "[i]f any of the conditions [of a supplementary payments provision] are not met, the provision no longer applies").[11]

### 1.  Conflict of Interest

Under Subparagraph (d) of the Supplementary Payments provision, an insured's indemnitee, such as Defendant, is only entitled to a defense pursuant to that provision if "[t]he allegations in the suit and the information [Plaintiff] know[s] about the [underlying] occurrence are such that *no conflict appears to exist* between the interests of the insured and the interests of the indemnitee[.]"  (Travelers Policy 81 (emphasis added).)[12]  Again, in the context of this case, "the insured" is the Blizzard Buster Entities and "the indemnitee" is Defendant.  (*See* Am. Counterclaims ¶¶ 9, 22.)

With respect to conflicts of interest, New York's Rules of Professional Conduct provide, inter alia, that "a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . the representation will involve the lawyer in representing differing interests[.]"  Rule 1.7(a)(1) of the Rules of Professional Conduct (22 NYCRR 1200.0).  However, Rule 1.7 also states that "a lawyer may represent a client" "[n]otwithstanding the existence of a concurrent conflict of interest . . . [only] if:  (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) *the representation does not involve the assertion of a claim by one*

---

[11] For purposes of this analysis, the Court assumes, as it must, that Defendant is an indemnitee of the Blizzard Buster Entities.  (*See* Am. Counterclaims ¶ 22 (alleging that the Blizzard Buster Entities are "obligated to defend and indemnify" Defendant in the Underlying Action).)

[12] Relatedly, the Court notes that part of Subparagraph (e) would require Defendant and the Blizzard Buster Entities to "agree that [Plaintiff] can assign the same counsel to defend" them all in the Underlying Action.  (Travelers Policy 81.)

*client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal*; and (4) each affected client gives informed consent, confirmed in writing." *Id.* Rule 1.7(b) (emphasis added).  Thus, under Rule 1.7(b), "where parties with differing interests assert claims against each other before the same tribunal, joint representation is not permitted, *regardless of consent*." *DeAngelis v. Am. Airlines, Inc.*, No. 06-CV-1967, 2010 WL 1270005, at *3 (E.D.N.Y. Mar. 26, 2010) (emphasis in original) (noting the implications of Rule 1.7(b)(3) in the context of considering whether to disqualify defense counsel).

Applying Rule 1.7 here, the Court concludes that there is a conflict of interest between Defendant and the Blizzard Buster Entities, such that Defendant cannot satisfy the requirements of Subparagraph (d).[13]  The Counterclaims make clear that both Defendant and the Blizzard Buster Entities have asserted claims for indemnification and contribution, among other things, *against one another* in the Underlying Action.  (Am. Counterclaims ¶¶ 24, 40–41.)  Thus, there is a "real or seeming incompatibility between" Defendant's and the Blizzard Buster Entities' interests.  *Conflict of Interest*, Black's Law Dictionary (11th Ed. 2019).  Consequently, there is more than a mere "appear[ance]" of a conflict, which is all that is forbidden under Subparagraph (d), (*see* Travelers Policy 81); indeed, there is a conflict that is *not waivable* under the New York's Rules of Professional Conduct, which would necessarily preclude Defendant and the Blizzard Buster Entities from agreeing to allow Plaintiff to "assign the same counsel to defend" each of those parties in the Underlying Action, as is required under Subparagraph (e), (*see id.*) *Cf. Muniz v. Re Spec Corp.*, 230 F. Supp. 3d 147, 153 (S.D.N.Y. 2017) (stating, in the context of a motion to disqualify, that a "[f]irm could not under any circumstances sue one client on behalf

---

[13] Nor could it satisfy Subparagraph (e) insofar as it requires Defendant and the Blizzard Buster Entities to agree to allow Plaintiff to "assign the same counsel to defend" each of those parties in the Underlying Action.  (Travelers Policy 81.)

of another in the same action" in light of Rule 1.7(b)(3)); *Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*, 722 F. Supp. 2d 295, 310 (E.D.N.Y. 2010) (concluding, also in the context of a motion to disqualify, that an asserted conflict was "not consentable under Rule 1.7(b)(3)" where an attorney "st[ood] on both sides of the same litigation"); *see also Cohen v. Strouch*, No. 10-CV-7828, 2011 WL 1143067, at *3 (S.D.N.Y. Mar. 24, 2011) (explaining that "Comment 17 to Rule 1.7 describes conflicts under Rule 1.7(b)(3) as non[-]consentable because of the institutional interest in vigorous development of each client's position when the clients are aligned directly against each other in the same litigation or other proceeding before a tribunal." (quotation marks omitted)).[14]

Defendant's various arguments to the contrary are unavailing. First, Defendant asserts that its and the Blizzard Buster Entities' "interests are wholly united as it pertains to" Reid-Lynch's claims in the Underlying Action. (Def. Opp'n 8.) But that assertion misses the point; the plain, unambiguous terms of the Supplementary Payments provision forbid the appearance of any conflict as between the "interests of the insured and the interests of the indemnitee[.]" (Travelers Policy 81.) In other words, the degree to which Defendant and the Blizzard Buster Entities are aligned as against Reid-Lynch does not matter for purposes of Subparagraph (d).

Second, Defendant spills a fair amount of ink arguing that there is no conflict of interest here because the Blizzard Buster Entities' claims against it in the Underlying Action are weak.

---

[14] Given that this conflict is so clearly not waivable, Defendant's argument that it somehow satisfies the Supplementary Payments provision because it "has agreed to waive any conflicts" is misguided. (Def. Opp'n 11.)

Moreover, the Court notes that, even if Defendant dropped its claims against the Blizzard Buster Entities in the Underlying Action—as it alleges it is willing to do, (*see* Am. Counterclaims ¶ 24)—this analysis would not change at all, given that there are no allegations that the Blizzard Buster Entities would drop *their* claims against Defendant. Even in that scenario, Defendant's and the Blizzard Buster Entities' interests would be in conflict based on the remaining claims against Defendant.

(*See* Def. Opp'n 8–11.)  However, it fails to explain—let alone point to any authority supporting—why that matters here.  As Plaintiff notes, "[t]here is no carve-out" to New York's Rules of Professional Conduct relating to conflicts of interest "for claims that one litigant says are not meritorious."  (Pl. Reply 8.)  *See* Rule 1.7 of the Rules of Professional Conduct (22 NYCRR 1200.0).[15]

Finally, the few cases upon which Defendant does rely are all inapposite.  Contrary to Defendant's assertion, *Bartolini v. Mongelli*, 17-CV-6276, 2018 WL 2725417 (E.D.N.Y. June 5, 2018), does not stand for the proposition that "the mere assertion of cross-claim[s] does not, in and of itself, create a conflict."  (*See* Def. Opp'n 9.)  There, the court simply concluded that there was no conflict of interest precluding counsel from representing two co-defendants who *had not* asserted claims against one another in that case or in an underlying state probate proceeding.  *See Bartolini*, 2018 WL 2725417, at *3–4.  Similarly, *Bulkmatic Transport Co. v. Pappas* also misses the mark because, there, the court concluded that there was no conflict of interest precluding a firm's representation of the plaintiff and certain third-party defendants where, again, those parties *had not* asserted claims against each other.  No. 99-CV-12070, 2001 WL 504841, at *2–3 (S.D.N.Y. May 11, 2001).  And Defendant's reliance on *Persh v. Peterson*, No. 15-CV-

---

[15] To the extent that Defendant asks this Court to pass on the merits of its pending state-court claims, the Court declines that invitation.

However, the Court notes that Defendant's reliance on *Espinal v. Melville Snow Contractors, Inc.*, 724 N.Y.S.2d 893 (App. Div. 2001), *aff'd*, 773 N.E.2d 485 (N.Y. 2002), and *Klein v. City & Cnty. Paving Corp.*, 16-CV-2264, 2018 WL 4265885 (S.D.N.Y. Sept. 5, 2018), to demonstrate the weakness of the Blizzard Buster Entities' claims in the Underlying Action seems to underscore the conflict between Defendant and the Blizzard Buster Entities.  (*See* Def Opp'n 10–11.)  Those cases discuss the extent to which contractors like the Blizzard Buster Entities owe a duty of care to personal-injury plaintiffs who, for example, get injured when they slip and fall on patches of ice.  *See Espinal*, 724 N.Y.S.2d at 893; *Klein*, 2018 WL 4265885, at *3–4.  It seems that Defendant is hoping to establish the Blizzard Buster Entities' tort liability in the Underlying Action, and that the Blizzard Buster Entities would, of course, prefer to establish the opposite—i.e., that they are *not* liable for Reid-Lynch's alleged injuries.

1414, 2015 WL 5773566 (S.D.N.Y. Oct. 2, 2015), is somewhat more egregious, as it *quotes* that case for the assertion that "[v]ague and conclusory allegations are insufficient to establish a conflict of interest." (Def. Opp'n 10.) However, such language does not appear in *Persh* at all; instead that court stated: "Vague and conclusory allegations are insufficient *to meet the burden required to disqualify counsel*." *Persh*, 2015 WL 5773566, at *5 (emphasis added). And, in any event, that case does nothing for Defendant's cause here because the court in *Persh* found that there was no conflict of interest preventing a firm from representing the defendant while separately representing a non-party corporation "in corporate matters" because there was no indication that "the two clients [were] otherwise adverse." *Id.* at *5–6 ("[The p]laintiff asserts that [the law firm] will represent [the d]efendant's and [the corporation's] differing interests without ever saying what those interests actually are, much less how they conflict.").

## 2.  Request that Plaintiff Conduct and Control Defendant's Defense

In addition, as a separate, independent ground for dismissal, Defendant's Counterclaims fail to establish that Subparagraph (e) of the Supplementary Payments provision has been satisfied. Under Subparagraph (e), the "indemnitee *and* the insured [must both] ask [Plaintiff] to conduct and control the defense of that indemnitee . . . *and* agree that [Plaintiff] can assign the same counsel to defend the insured and the indemnitee." (Travelers Policy 81 (emphases added).) As noted *supra*, the fact that a non-waivable conflict exists between Defendant and the Blizzard Buster Entities precludes Defendant from satisfying Subparagraph (e) because "the same counsel" *cannot* represent each of those Parties in the Underlying Action. (*See supra* Section II.B.1.) In addition, as to the first clause in Subparagraph (e), there is no dispute that the Blizzard Buster Entities have not asked Plaintiff to "conduct and control" Defendant's defense in the Underlying Action; Defendant alleges as much in its Counterclaims. (*See* Am. Counterclaims ¶ 36.)

17

Recognizing that this condition in Subparagraph (e) has not been satisfied, Defendant contends that Plaintiff—through the defense counsel it assigned to defend the Blizzard Buster Entities in the Underlying Action[16]—has sought to prevent Defendant from satisfying Subparagraph (e) by denying its (and its counsel's) attempts to contact the Blizzard Buster Entities "to demand [that they] request that [Plaintiff] conduct and control [Defendant's] defense" in the Underlying Action.  (*Id.*)  In other words, Defendant argues that "[Plaintiff] is the sole cause preventing [it] from contacting [the Blizzard Buster Entities] to avoid the condition [in Subparagraph (e)] being met [sic] and, thus, [Plaintiff] appears before the [C]ourt with '[un]clean hands.'"  (Def. Opp'n 11–12.)[17]

However, in making these allegations, Defendant fails to point to any term within the Supplementary Payments provision, or indeed any part of the Policy, that requires either that a third-party indemnitee have the opportunity to ask an insured to request that Plaintiff provide any sort of coverage to that indemnitee, or that Plaintiff facilitate any such conversation.  Indeed, to the extent that counsel for the Blizzard Buster Entities has "refuse[d] to allow [Defendant] or its counsel to contact" those Entities regarding the condition in Subparagraph (e), (Am. Compl. ¶ 36), it would seem highly inappropriate for Plaintiff to interfere, *see Feliberty v. Damon*, 527

---

[16] Incidentally, this is the same counsel Defendant would have defend *it* in the Underlying Action.  (*See* Travelers Policy 81 (requiring that the "indemnitee and the insured . . . agree that [Plaintiff] can assign the same counsel to defend" them both).)

[17] Defendant also asserts that "the continued representation of [the Blizzard Buster Entities] by [Plaintiff's] assigned counsel is intended solely to prevent communication between [Defendant] and [the Blizzard Buster Entities] and, thereby, avoid [Plaintiff's] obligation to defend and indemnify [Defendant]."  (Def. Opp'n 14.)  It bears noting, however, that the Supplementary Payments provision *requires* that Plaintiff defend the Blizzard Buster Entities in order to trigger the additional provision of any defense to the Entities' indemnitee.  (*See* Travelers Policy 81 (stating, in the Supplementary Payments provision, that:  "*If we defend an insured* . . . [*then*] we will defend [their] indemnitee if all of the following conditions are met[] . . .." (emphases added)).)

N.E.2d 261, 265 (N.Y. 1988) ("[T]he paramount interest independent counsel [appointed by an insurer] represents is that of the insured, not the insurer. *The insurer is precluded from interference with counsel's independent professional judgments in the conduct of the litigation on behalf of its client*." (emphasis added) (citations omitted)); *accord U.S. Underwriters Ins. Co. v. Tauber*, 604 F. Supp. 2d 521, 532 (E.D.N.Y. 2009).

Finally, the Court finds the cases Defendant relies upon for the propositions that "an insurer is estopped from arguing the non-performance of a pre-condition where the insurer's conduct frustrates the ability to satisfy the pre-condition," and that "a party to a contract may not avail itself of a condition precedent where, by its own conduct, [it] has rendered compliance therewith impossible" to be inapplicable here.  (Def. Opp'n 12–13.)  For instance, in *Zaitchick v. American Motorists Insurance Co.*, the court concluded that the defendant insurance company—which had refused to tender payment to the plaintiffs—had to pay the plaintiffs damages in the amount of "the replacement value of their home" rather than "the actual cash value of the house immediately before the fire" that destroyed their home, in part, because its refusal to tender payment prevented the plaintiffs from being able to repair their home, which was a prerequisite to full recovery under the relevant contract.  554 F. Supp. 209, 216–17 (S.D.N.Y. 1982), *aff'd*, 742 F.2d 1441 (2d Cir. 1983); *see also Bailey v. Farmers Union Co-Operative Ins. Co. of Neb.*, 498 N.W.2d 591, 598–99 (Neb. Ct. App. 1992) (applying Nebraska law in a case much like *Zaitchick* and affirming the trial court's finding that, as in *Zaitchick*, the defendant insurance company owed the plaintiff "replacement cost coverage" for her destroyed home, rather than "actual cash value or another house of equal value").  Here, however, there is no allegation that Plaintiff has denied the actual insureds under the Policy—the Blizzard Buster Entities—any

benefit to which they are entitled.  Simply put, Defendant's attempt to cast itself as an aggrieved insured that has been denied the coverage it is owed is not borne out by the facts *or* the law.

In sum, Defendant has failed to plead sufficient facts showing that Subparagraph (e) of the Supplementary Payments provision has been satisfied (or that it is somehow excused from having to meet the conditions therein).[18]

### III.  Conclusion

For the foregoing reasons, Plaintiff's Motion To Dismiss is granted.  Defendant has already amended its Counterclaims once, after the Court put it on notice of the deficiencies in those Counterclaims.  (*See* March 2023 Opinion 16 (rendering "the first adjudication of [Defendant's] claims").)  "To grant [Defendant] leave to amend would be allowing [it] a 'third bite at the apple,' which courts in this district routinely deny."  *Binn v. Bernstein*, No. 19-CV-6122, 2020 WL 4550312, at *34 (S.D.N.Y. July 13, 2020) (collecting cases), *report and recommendation adopted*, 2020 WL 4547167 (S.D.N.Y. Aug. 6, 2020); *cf. Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." (alteration adopted) (footnote and quotation marks omitted)); *Kamdem-Ouaffo v. Pepsico, Inc.*, 160 F. Supp. 3d 553, 574 n.28 (S.D.N.Y. 2016) ("[T]he [c]ourt has given [p]laintiff two bites at the apple, and there is no need for a third bite.").  Defendant's claims are therefore dismissed with prejudice.

---

[18] As before, (*see* March 2023 Opinion 16 n.6), given that Defendant has failed to establish that it is an insured—or otherwise entitled to coverage—under the Policy, the Court need not address its claims for declaratory relief and breach of contract, (Am. Counterclaims ¶¶ 49–60.)

The Clerk of Court is respectfully directed to terminate the pending Motion, (*see* Dkt.

No. 96), and to close the case.

SO ORDERED.

Dated:   December 11, 2023
          White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

21